IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OCTAVIA H. IRVING, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-20-217-RAW-SPS |

### REPORT AND RECOMMENDATION

The claimant Octavia H. Irving requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole and "[t]he substantiality of

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was twenty-two years old at the time of the administrative hearing (Tr. 32, 194). She completed high school while attending special education classes and has no past relevant work (Tr. 24, 272). The claimant alleges that she has been unable to work since February 28, 2017, due to back pain, depression, anxiety, and being a cutter (Tr. 271).

### Procedural History

On December 4, 2017, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 17, 2019 (Tr. 15-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that he limited her to lifting ten pounds frequently and fifteen pounds occasionally, and further found she could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and that she must avoid concentrated exposure to extreme

temperatures, humidity, wetness, dust, gases, fumes, odors, and other pulmonary irritants. Additionally, he found she must be allowed to alternately sit/stand every twenty to twenty-five minutes throughout the workday for a brief postural change, but without leaving the workstation. Finally, he limited her to semi-skilled work (work which requires understanding, remembering, and carrying out some detailed skills, but does not require doing more complex work duties) with superficial interpersonal contact with supervisors and co-workers; that she can attend and concentrate for extended periods but should have normal, regular work breaks; and that that she should have only occasional, superficial contact with the general public (Tr. 20). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, touchup screener and semi-conductor bonder (Tr. 24-25).

## Review

The claimant contends that the ALJ erred by: (i) failing to find that her mental impairments equal either Listing §§ 12.04, 12.06, and/or 12.08; (ii) failing to properly formulate her RFC, including failing to evaluate the state reviewing physician opinions and to order a consultative exam, consider her obesity, and properly evaluate the consistency of her statements; and (iii) failing to properly formulate a hypothetical to the vocational expert ("VE") that included all her limitations, which affected the jobs identified. The undersigned Magistrate Judge finds these contentions unpersuasive.

The ALJ determined that the claimant's degenerative disc disease, obesity, asthma, depressive/bipolar disorder, impulse control disorder, anxiety/obsessive disorder, and substance addiction disorder (drugs and alcohol) were severe impairments, but that any

other mentioned impairment was nonsevere (Tr. 17). The relevant medical evidence reveals that the claimant had a cervical sprain following a motor vehicle accident in 2015 (Tr. 360). An August 2017 x-ray of the lumbar spine revealed very mild degenerative changes at L4-5 (Tr. 458). In November 2017, one month prior to her application date, an MRI of the lumbar spine revealed degenerative disc disease of the lumbar spine without significant spinal or neuroforaminal stenosis (Tr. 368). She received an epidural steroid injection for her back pain on January 8, 2018, but she continued to complain of a headache and low back pain one week later (Tr. 487, 501, 513). A January 17, 2018 MRI of the lumbar spine revealed central disc protrusion at L4-5 with moderate spinal stenosis (Tr. 507). The claimant's weight ranged from 350 to 414 pounds during the relevant time period (Tr., *e. g.*, 499, 564, 738).

     On April 7, 2018, Dr. Connor Fullenwider conducted a physical examination of the claimant. He noted a decreased range of motion of the back, as well as a positive straight leg raise test bilaterally, and suggested limitations with regard to bending, squatting, or lifting greater than thirty pounds (Tr. 566). He also recommended an MRI of the lumbar spine and psychiatric evaluation (Tr. 566). An October 25, 2018 MRI of the lumbar spine revealed prominent central disc protrusion at L4-L5 contributing to mild central canal narrowing and abutment of the exiting L5 nerve roots bilaterally, as well as findings suggestive of a sprain of the interspinous ligament at L4-L5 (Tr. 618). Treatment notes further interpreted this MRI as showing a large central disc herniation at L4-5, with effacement of the thecal sac while the neural foramen remained largely patent and alignment of the spine speared anatomic (Tr. 728).

The claimant received mental health treatment at Carl Albert Mental Health Treatment Center in January 2018, for, *inter alia*, severe major depression without psychotic features, intermittent explosive disorder, generalized anxiety disorder, and marijuana abuse (Tr. 474-475).

State agency physicians found the claimant could perform light work with no additional limitations (Tr. 76-78, 118-119). As to her mental impairments, Dr. Randy Cochran found that the claimant could perform simple and some complex tasks with routine supervision and relate to supervisors and co-workers on a superficial work basis with limited public contact, but that she may have difficulty coping with the stress of rapid changes and may prefer tasks that do not require much alteration in routine or work duties (Tr. 80). Upon review, Dr. Jason Gunter concluded that the claimant could perform simple and more complex tasks of 1-4 steps with routine supervision, interact appropriately with co-workers and supervisors, and have superficial public contact, and that she could adapt to a work setting and some changes in work settings (Tr. 121).

In his written opinion, the ALJ determined the claimant's severe impairments at step two (Tr. 17-18). As to step three, the ALJ considered, *inter alia*, Listings 12.04, 120.06, 12.08, and concluded that her impairments did not meet or medically equal any of the Listings. At step four, the ALJ summarized the claimant's testimony, as well as the medical and opinion evidence (Tr. 18-24). The ALJ found that the imaging studies in the record did not support a finding of disability as to the claimant's degenerative disc disease, and that inhalers had largely been effective in controlling her asthma (Tr. 21-22). He further noted the consultative exam findings, as well as other notes reflecting her restricted range

of motion of the lumbar spine but noted that she had not undergone surgical intervention and her treatment had remained conservative (Tr. 22). He further noted the behavioral health records, but that her conditions remained stable on medication (Tr. 23). In discussing the opinion evidence at step four, the ALJ stated that the state reviewing physician opinions were persuasive and supported by the objective evidence related to her individual impairments, as well as her presentation at exams, and her own reported symptoms (Tr. 23). He then added the sit/stand option, pulmonary restriction, and lifting restrictions out of an abundance of caution based on the evidence (Tr. 24). The ALJ further found that the claimant's statements were not consistent with the medical evidence (Tr. 21).

The claimant first asserts that she meets or medically equals the requirements of Listings 12.04 (affective mood disorders), 12.06 (anxiety-related disorders), and/or 12.08 (personality and impulse-control disorders). Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why the claimant was not disabled at step three. *Id.*, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

Listings 12.04, 12.06, and 12.08 contain the following criteria: (i) "paragraph A" medical documentation criteria, (ii) "paragraph B" functional criteria, and (iii) "paragraph C" criteria for serious and persistent mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00A(2), 12.04, 12.06, 12.08 (2017). In order to meet one of these Listings, a claimant must satisfy the "paragraph A" medical documentation criteria and either the "paragraph B" criteria or the "paragraph C" criteria. *Id.* Here, the ALJ determined that the claimant met the "A" criteria for each of these impairments, but that she did not meet the "B" (where applicable) criteria (Tr. 41). The "paragraph B" criteria for all three Listings are identical, and require proof that the claimant has an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* Here, the ALJ determined that the claimant had mild limitation in the first and fourth areas, and moderate limitations in the second and third areas (Tr. 18-19). The ALJ thus found the "paragraph B" criteria were not satisfied (Tr. 19). He further found the claimant did not meet the applicable "C" criteria, which requires the impairment must be "serious and persistent" for a two-year period and that the claimant has achieved only marginal adjustment with treatment, because she was able to adapt to changes including caring for personal care needs, completing household chores, and driving (Tr. 19).

In support of her position that she meets these Listings, the claimant contends that the ALJ improperly ignored longitudinal evidence of her disability, CAR evaluation scores showing impairments, and "serious and persistent episodes of decompensation," but points

to no specific evidence in the record as to the episodes of decompensation. More importantly, she points to none of the four "paragraph B" criteria to specifically assert a marked or extreme limitation. In other words, the claimant essentially asks the undersigned Magistrate Judge to reweigh the evidence in the record, which is impermissible. *See Casias v. Sec. of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991) ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). Moreover, as set forth above, the ALJ clearly considered the effect of the claimant's severe mental impairments when assessing her RFC. *See Padilla v. Colvin,* 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) (finding no reversable error at step three where the claimant did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of [the claimant's impairments] on her RFC.").

The claimant next contends that the ALJ erred in her RFC assessment because he failed to properly evaluate the state reviewing physician opinions and to order a consultative exam, failed to consider her obesity, and failed to properly evaluate the consistency of her statements. The Court finds that the ALJ did not, however, commit any error in his analysis. As discussed above, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill v. Astrue,* 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to point to 'specific, affirmative,

medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

Turning to the ALJ's evaluation of the state reviewing physician opinions, the undersigned Magistrate Judge notes that for claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the

ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The claimant's specific complaint is that the ALJ engaged in improper "picking and choosing" when he failed to reconcile differences in the state reviewing physician reports. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). This is not borne out by the record, however, because the ALJ did specifically discuss their findings. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. Moreover, the difference in their opinions is not sufficient to rebut the ALJ's findings as to the claimant's functional limitations. In this case, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting his reasons, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Accordingly, the ALJ's determination here is entitled to deference and the undersigned Magistrate Judge finds no error in analyzing these opinions. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") (citation omitted).

Next, the claimant contends that the ALJ should have ordered a consultative examination as to her mental impairments, since Dr. Fullenwider seemed to recommend one and the state reviewing physician opinions hinted as such as well. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring

that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993) (*citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Id.* at 361 [citations omitted]. If the ALJ had doubts as to any of the evidence, he *could have* re-contacted her treating physicians to clear it up, *see* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency ... We may recontact your treating physician, psychologist, or other medical source."), but he was under no obligation to do so, as the claimant implies, because the ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (*citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)). Here, the claimant has likewise not met her burden.

Furthermore, Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2002 WL 34686281, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately"; therefore, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A,

3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*, 2002 WL 34686281, at *6.  Here, the record reflects that the claimant's weight placed her in the category of morbidly obese. However, the ALJ thoroughly discussed the claimant's physical and mental impairments and the reasons for his RFC determination, *specifically noting* that her obesity did not affect her ability to ambulate effectively or impair her social functioning while recognizing her decreased range of motion of the back and positive straight leg raise tests (Tr. 22).  The claimant pointed to no additional evidence or opinion in the case record as to her obesity, and the ALJ was not required to speculate about whether the claimant's obesity exacerbated her other impairments. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments.").

As to the evaluation of the claimant's subjective statements, the Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we

>evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].   The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient.  *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the undersigned Magistrate Judge notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21).  In making such conclusion, the ALJ noted inconsistencies between the claimant's subjective statements and the evidence of record, including:  (i) imaging studies of the claimant's lumbar spine, (ii) the claimant's asthma that was well-controlled with medication, (iii) the lack of evidence that the claimant's obesity affected her ability to ambulate, and (iv) behavioral treatment records reflecting the claimant's stable condition while undergoing treatment (Tr. 21-23).

The claimant's argument here largely centers on his assertion that the ALJ failed to order a consultative mental diagnostic examination, but that has been addressed above. Rather, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination.  Although perhaps a sparse opinion, the ALJ sufficiently linked his subjective statement analysis to the evidence and provided specific reasons for the determination.  There is no indication that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

The claimant's remaining arguments relate to the ALJ's findings at step five. At step five, the Commissioner has the burden to show that, given a claimant's background and RFC, the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). *See also Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998) (citation omitted). The ALJ can satisfy this burden with a VE's testimony. 20 C.F.R. §§ 404.1566(e), 416.966(e). To constitute "substantial evidence," the ALJ must present the VE with all of a claimant's physical and mental impairments before the VE determines whether sufficient jobs exist in the national economy. *Hargis v. Sullivan*, 945 F.2d 1482, 1491-92 (10th Cir. 1991). The ALJ may elicit testimony through hypothetical questions that "relate with precision all of a claimant's impairments[.]" *Id.* at 1492 (quotation omitted). When the ALJ's RFC findings are "adequately reflected in the ALJ's hypothetical inquiries to the [VE], the expert's testimony provide[s] a proper basis for adverse determination of [the] case." *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993).

The claimant asserts that the ALJ failed to include all her limitations in the hypothetical question to the VE, specifically her moderate limitations of social functioning and concentration, persistence, or pace. However, as set forth above, the ALJ clearly considered all of the claimant's impairments and she does not point to any other evidence to support the limitations she claims. Accordingly, the ALJ was not required to include additional limitations in her RFC assessment, or in her hypothetical question posed to the VE. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a

hypothetical question to the VE that included all the limitations the ALJ ultimately included in h[er] RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). *See also Adams v. Colvin,* 553 Fed. Appx. 811, 815 (10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC.") (*citing Qualls,* 206 F.3d at 1372).

Finally, the claimant asserts that the jobs identified by the ALJ do not exist in significant numbers. The VE identified, and the ALJ adopted, the jobs of touchup screener, DICOT § 726.684-110, with 22,000 jobs nationally, and semi-conductor bonder, DICOT § 726.685-066, with 21,000 jobs nationally. The determination that work can be performed in significant numbers is considered case-specific, and "the issue of numerical significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quotation omitted). The Tenth Circuit has held that this finding is not limited to local or regional numbers but is instead a determination of whether work exists in significant numbers in the regional *or* national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Here, the undersigned Magistrate Judge is persuaded that 22,000 jobs available nationally for the touch-up screener, and 21,000 nationally for the semi-conductor bonder, are both jobs available in significant numbers. *See Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers* [*v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009)] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and

finds that 32,000 utility tractor jobs in the national economy is also significant."); *Jones v. Colvin,* 2015 WL 5573074, at *3 (E.D. Okla. Sept. 22, 2015) (finding 15,520 jobs in the national economy significant); *Holmes v. Saul,* 2019 WL 3290492, at *6 (D.N.M July 22, 2019) (finding 11,700 jobs in the national economy significant). *See also Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (where the two remaining available jobs cited by the ALJ, there were 11,000 jobs regionally and 152,000 nationally, "we do not believe any reasonable factfinder could have determined that suitable jobs did not exists in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

When all the evidence is taken into account, the conclusion that the claimant could perform a reduced range of light work is supported by substantial evidence. *See Hill,* 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d at 949. The ALJ specifically noted every medical record available in this case, gave reasons for her RFC determination, and ultimately found that the claimant was not disabled. This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citation omitted). The gist of the claimant's appeal is that the

Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

DATED this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**